Edmond BANG, Plaintiff,

v.

**IBM CORPORATION, Defendant.**

No. 07CV0292 (ADS)(WDW).

United States District Court,
E.D. New York.

Feb. 23, 2009.

Wolin & Wolin, Esqs., by Alan E. Wolin, Esq., of counsel, Jericho, NY, for the Plaintiff.

Paul, Hastings, Janofsky & Walker, LLP, by Allan S. Bloom, Esq., Emily J. Ratté, Esq., Laura Catherine Marino, Esq., Zachary D. Fasman, Esq., of counsel, New York, NY, for the Defendant.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge:

## I. BACKGROUND

The following facts are derived from the pleadings and the parties' submissions on the motion. The plaintiff, Edmond Bang, commenced this action by filing a summons and complaint in the Supreme Court of the State of New York, County of Suffolk on or about December 14, 2006, alleging employment discrimination on the basis of age, race and national origin in violation of the New York State Human Rights Law, N.Y. Exec. Law § 290, *et seq.* (the "NYHRL"). The plaintiff also alleged that the defendant terminated his employment because he was within one year of vesting in an IBM employee pension plan. On January 19, 2007 the defendant IBM Corporation ("IBM") removed the action to this Court on the basis that the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.,* ("ERISA"), provided the exclusive remedy for the plaintiff's claim that the defendant's termination of his employment was motivated, in part, by an intention to interfere with the his rights under an IBM pension plan. The plaintiff raised no federal claims for discrimination.

The plaintiff is currently a 61 year-old Asian male, who was born in South Korea. He alleges that in October of 2000, he was employed by the defendant as a Senior IT Architect (a Band 10 Employee) working out of his home, but reporting to the defendant's Business Consulting Division. The plaintiff describes his duties as writing client proposals, client engagement, and attending client meetings. The plaintiff maintains that despite his exemplary performance, the defendant discriminated against him on account of his age, race and national origin. The plaintiff's employment with IBM was terminated on or about March 3, 2005.

The plaintiff alleges that throughout his employment other employees of comparable skill and qualification, who were non-Asian were paid more and received incentives and bonus payments that he did not. In addition, the plaintiff states that he received unfair poor performance reviews, known as PBCs, from certain managers because of his Asian background. Specifically, the plaintiff notes that several managers complained of his communications skills, and on some occasions referenced the need to improve his English language skills. However, the plaintiff notes that the written work he produced was rarely, if ever, changed in content by his supervisors.

The plaintiff alleges that his direct supervisor, James M. Rice, made two derogatory statements in connection with the plaintiff's race and national origin. In addition, the plaintiff contends that several of his managers instructed him to draft performance assessments of his work for their approval because they lacked sufficient time to draft the reviews. The plaintiff states that the reviews were returned to

him with only minor changes and that the defendant's proffered reason of firing him for falsifying a performance evaluation is a pretext for discrimination.

Presently before the Court is the defendant's motion for summary judgment. The defendant contends that the plaintiff's substandard performance rendered him unqualified for his position; that the circumstances of the plaintiff's termination do not give rise to an inference of discrimination; and the defendant had a legitimate, nondiscriminatory reason for terminating the plaintiff that he cannot overcome by a showing of pretext. Further, the defendant states that the plaintiff's claims that his employment was terminated in an attempt to interfere with his rights in the employee pension plan are preempted by ERISA and the plaintiff has failed to offer any cognizable evidence in support of this contention.

## II. DISCUSSION

### A. *Summary Judgment Standard*

Summary judgment is proper only where no genuine issue of material fact exists to present to the trier of fact. Rule 56 of the Federal Rules of Civil Procedure states:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c).

A motion for summary judgment should be granted only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The moving party bears the bur-

den of establishing the absence of a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once the moving party has offered evidence that no genuine issue of material fact remains, the burden shifts to the non-moving party to provide evidence that a genuine, triable issue remains. *Id.* at 250, 106 S.Ct. 2505. It is well-settled that the non-moving party cannot defeat summary judgment with nothing more than unsupported assertions or the allegations in its pleadings. Fed. R.Civ.P. 56(e); *Cifarelli v. Vill. of Babylon,* 93 F.3d 47, 51 (2d Cir.1996); *Goenaga v. March of Dimes Birth Defects Found.,* 51 F.3d 14, 18 (2d Cir.1995).

In deciding a motion for summary judgment, the Court must view all of the evidence in the light most favorable to the non-moving party and must draw all permissible inferences from the submitted affidavits, exhibits, interrogatory answers, and depositions in favor of that party. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *Vann v. City of N.Y.,* 72 F.3d 1040, 1048–49 (2d Cir.1995). Notably, "the trial court's task at the summary judgment motion stage of litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs. Ltd.,* 22 F.3d 1219, 1224 (2d Cir.1994); *see Donahue v. Windsor Locks Board of Fire Comm'rs,* 834 F.2d 54, 58 (2d Cir.1987) (holding that on a motion for summary judgment, the court "cannot try issues of fact; it can only determine whether there are issues to be tried").

### B. *As to the Plaintiff's Discrimination Claims*

■ The New York Human Rights Law provides that it is unlawful for any employ-

er "because of the age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, or marital status of any individual, . . . to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.Y. Exec Law § 296(1)(a) (McKinney 2005). Claims brought pursuant to the N.Y. HRL are analyzed in accord with the rules governing Title VII claims. *See Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007).

■ According to the familiar burden shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. To establish a *prima facie* case of discrimination, the plaintiff must show that: (1) he is a member of a protected class; (2) he was qualified for his job; (3) he suffered an adverse employment action; and (4) such adverse employment action occurred under circumstances giving rise to an inference of discrimination. *See Collins v. New York City Transit Auth.*, 305 F.3d 113, 118 (2d Cir.2002). The Second Circuit has "characterized this burden as 'de minimis:' it is 'neither onerous, nor intended to be rigid, mechanized or ritualistic.'" *Beyer v. County of Nassau*, 524 F.3d 160, 163 (2d Cir.2008) (quoting *Abdu–Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 467 (2d Cir.2001)). "Nonetheless, a plaintiff's case must fail if [he] cannot carry this preliminary burden." *Id.*

■ Once the plaintiff has established a *prima facie* case, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802–03, 93 S.Ct. 1817. Then, the plaintiff must present evidence to show that the employer's reason is illegitimate or is mere pretext for an impermissible

discriminatory motive. *Id.* at 804–05, 93 S.Ct. 1817; *McPherson v. New York City Dept. of Educ.*, 457 F.3d 211, 216 (2d Cir. 2006). "[T]he plaintiff is not entitled to judgment unless she shows that the challenged employment decision was more likely than not motivated, by unlawful . . . discrimination." *Howley v. Town of Stratford*, 217 F.3d 141, 150 (2d Cir.2000).

■ Here, the defendant contends that the plaintiff cannot establish a *prima facie* case of discrimination because his poor performance evaluations, prepared by several different managers, show that he was unqualified for his job. While the defendant contends that the plaintiff must establish satisfactory job performance to satisfy the qualification prong, the plaintiff contends that he must show only that he possessed the basic skill necessary to perform his job. The Second Circuit has made clear that "a mere variation in terminology between 'qualified for the position' and 'performing . . . satisfactorily' would not be significant so long as, in substance, all that is required is that the plaintiff establish basic eligibility for the position at issue, and not the greater showing that he satisfies the employer." *Slattery v. Swiss Reinsurance America Corp.*, 248 F.3d 87, 91–92 (2d Cir.2001) ("[P]laintiff must show only that he possesses the basic skills necessary for performance of the job." (internal quotations and citations omitted)).

Here, the plaintiff has established that he possessed more than the basic skills necessary to perform his job, including his extensive post-graduate education in electrical engineering and information technology, and his long career in the information technology field. Further, in addition to several poor evaluations of the plaintiff, the defendant attaches several very positive evaluations of the plaintiff's performance, the authenticity of which it does not dispute. (Decl. of Kelitza Gomez, at Exh.

A (PBC from William Ireland giving plaintiff an evaluation of 5/5; PBC from Glenn E. Herman recommending plaintiff "without hesitation" to the role of Project Manager; and PBC from Tim Cyr evaluating the plaintiff at a level of 5/5)).

■ The defendant further contends that the plaintiff's employment termination did not occur under circumstances giving rise to an inference of discrimination because the racially insensitive remarks by Rice were merely stray remarks unrelated to Bang's discharge and IBM had a legitimate, non-discriminatory reasons for firing the plaintiff. In addition to the several poor performance evaluations, the defendant submits an e-mail from Francis DeMarco, plaintiff's manager on a project for JP Morgan Chase to Rice, complaining that the plaintiff forwarded a confidential billing file to the client in violation of IBM policy. (Decl. of James Rice at Exh. B). In addition, the defendant contends that while applying to be staffed on a new project, the plaintiff falsified the performance evaluation of Maureen Bilodeau, a supervisor on a project the plaintiff worked on. (Decl. of Kelitza Gomez Exhs. A and C).

■ As noted above, upon a showing by the defendant of a legitimate nondiscriminatory reason for discharge, the burden shifts back to the plaintiff to show that the defendant's articulated reasons are a pretext. An employee may establish pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

The Court finds that the plaintiff has raised a number of factual issues concerning whether the defendant's proffered reasons for his termination were a pretext for discrimination. First, the plaintiff explains that Alan Maciag, the recipient of the allegedly confidential IBM information was actually hired by DeMarco as an outside contractor and was a member of the defendant's inner circle on the JP Morgan Chase project. Further, although the defendant states that the plaintiff transmitted this information to Maciag in violation of established IBM policy, the defendant has not provided evidence of that policy, including whether it was provided to all employees in written form or was a informal understanding.

Second, with respect to the defendant's contention that plaintiff improperly falsified a performance review by project manager Bilodeau, the Court has compared the document allegedly prepared by the plaintiff with the "authentic" document prepared by Bilodeau and concludes that the differences are not so apparent and significant that they jump off the page and pronounce—"falsified." In fact, the two documents are quite similar. Comparison of these two documents would not necessarily lead a reasonable person to the conclusion that the plaintiff altered the document to make it more favorable to him.

More importantly on this issue, the plaintiff provides an electronic mail message from Ms. Bilodeau dated September 24, 2004, in which she instructs the plaintiff to "[w]rite up a paragraph on which you did for [the client] and send it to me," in response to the plaintiff's request for a written evaluation. (Bang Aff. at Exh. 4). The plaintiff further states that once the evaluation documents were uploaded to IBM personnel system, he was without access to edit those documents. (Bang Aff. at ¶ 44).

Finally, the plaintiff raises another triable issue because, Rice, the same individual who allegedly made derogatory comments about the plaintiff's heritage was

the principal decision-maker in his termination. *See Tomassi v. Insignia Financial Group, Inc.*, 478 F.3d 111, 116 (2d Cir.2007) ("The relevance of discrimination-related remarks does not depend on their offensiveness, but rather on their tendency to show that the decision-maker was motivated by assumptions or attitudes relating to the protected class."); *cf. Legendre v. Chase Manhattan Bank*, No. 94cv2911, 1996 WL 514874, at *6 (S.D.N.Y. Sept. 10, 1996) (alleged discriminatory remark made prior to the plaintiff's termination was insufficient to raise an inference of discrimination without "competent evidence" that the offending coordinator played a role in the termination decision).

Following the complaint by DeMarco, Rice wrote to IBM human resource staff, stating "[g]iven the current situation … I would like to move forward with separating Edmond Bang from IBM. What is the next step for us?" (Rice Decl. at Exh. B). This resulted in the plaintiff being offered a performance improvement plan or a separation package. (Bang Aff. at ¶ 36). Then, following the discovery of the allegedly altered performance evaluation document, Rice again wrote to human resource personnel, this time seeking to terminate the plaintiff's employment. (Rice Decl. at Exh. C). Accordingly, credibility determinations must be made to determine if Rice actually made the statements Bang accuses him of making and whether the articulated reasons for the plaintiff's discharge were legitimate or mere a pretext for Rice's discriminatory attitude. *Tomassi*, 478 F.3d at 115 ("The more a remark evinces a discriminatory state of mind, and the closer the remark's relation to the allegedly discriminatory behavior, the more probative that remark will be."). The defendant's motion for summary judgment on the plaintiff's discrimination claims is denied.

**C. As to Interference with Rights Guaranteed by ERISA**

Section 510 of ERISA provides that "it shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant … for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. § 1140. "An essential element of the plaintiff's proof under the statute is to show that an employer was at least in part motivated by the specific intent to engage in activity prohibited by § 510." *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1111 (2d Cir.1988). Further, "[b]ecause the existence of a specific intent to interfere with an employee's benefit rights is critical in § 510 cases-yet is seldom the subject of direct proof," such claims are analyzed using the *McDonnell Douglas* burden-shifting framework. *Id.*

Here, in support of his claim, the plaintiff asserts that he was within one year of vesting in the IBM employee pension plan and that the company has faced litigation in the past for depriving older employees of rights in the pension plan. Indeed, at the time the plaintiff's employment was terminated, he was approximately seven months away from reaching the five year employment mark. Regardless of the admissibility of the extraneous evidence that the plaintiff submits in support of his claim, the proximity of the plaintiff's termination to his vesting in the pension plan, along with the evidence showing that he was qualified for his position, raise an inference of ERISA discrimination as a matter of law. *See Dister*, 859 F.2d at 1115 (finding plaintiff established a *prima facie* case under § 510 where he was qualified for his position, yet was discharged four months and seven days before his rights would vest in an ERISA plan); *Young v. Bank of Boston Conn.*, No.

93CV1642, 1995 WL 908616, at *5 (D.Conn. Mar. 31, 1995) (finding an inference of discrimination where employee was discharged six months before vesting); *Corcoran v. GAB Business Servs., Inc.,* 723 F.Supp. 966, 969 (S.D.N.Y.1989) (finding inference where employee was fired seven months before vesting). Further, as noted above, the plaintiff has raised sufficient issues of triable fact concerning the defendant's proffered reasons for terminating his employment.

## III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED,** that the defendant's motion for summary judgment is denied in its entirety; and it is further

**ORDERED,** that the parties are directed to appear for a pre-trial conference and to set a date for jury selection in this matter on Thursday, March 12, 2009 at 9 a.m. in courtroom 1020.

**SO ORDERED.**