**Robin WINSTON, Plaintiff,**

v.

**VERIZON SERVICES CORP.,
Defendant.**

**No. 08 Civ. 4072(PKC).**

United States District Court,
S.D. New York.

June 16, 2009.

Nils C. Shillito, Stephen D. Hans & Associates, P.C., Stephen D. Hans, Stephen D. Hans & Associates, P.C(LIC), Long Island City, NY, for Plaintiff.

Martin Warren Aron, Edwards & Angell Palmer & Dodge L.L.P., Scott H. Casher, Edwards Angell Palmer & Dodge, LLP (NYC), New York, NY, for Defendant.

## MEMORANDUM AND ORDER

P. KEVIN CASTEL, District Judge.

Plaintiff brings claims of employment discrimination and retaliation under the

New York State Human Rights Law ("NYSHRL"), N.Y. State Executive Law § 290 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Administrative Code § 8–101, *et seq.* She claims that she was discriminated against on the basis of race and gender, and that she was subject to retaliation for complaining about a supervisor's treatment of her. The action originally was filed in the Supreme Court of the State of New York, Bronx County and then removed to federal court on grounds of diversity of citizenship. None of the claims arises under federal law.

Discovery in this case is now closed, and defendant Verizon Services Corp. ("Verizon") moves for summary judgment. For the reasons explained below, the defendant's motion for summary judgment is denied.

## BACKGROUND

Plaintiff Robin Winston, who is African American and female, was formerly employed by Verizon as a strategic account manager. (56.1 ¶ 1.) She was the only African American who worked in her department as a strategic account manager, and she began employment at the company in 1982, shortly after she graduated from college. (56.1 ¶ 27; 56.1 Resp. ¶¶ 28–29.) In subsequent years, the plaintiff held numerous positions within the company and was promoted several times. (56.1 Resp. ¶ 30.) She received multiple positive employment reviews prior to 2003. (56.1 Resp. ¶ 31.)

In early 2003, Verizon faced increased competition within the telecommunications industry, resulting in "an extreme amount of pressure" to increase sales and revenue. (56.1 ¶ 4.) As a result, Verizon reorganized its Strategic Account Branch, and assigned strategic account managers such as the plaintiff to Verizon's most significant customers. (56.1 ¶ 5.) As part of the reorganization, Kevin Organ, a nonparty to this action, was named plaintiff's supervisor, and plaintiff was given principal responsibility over Verizon's account with Credit Suisse/First Boston ("Credit Suisse"). (56.1 ¶ 5.) Plaintiff was assigned an annual quota of $6 million in sales to Credit Suisse. (56.1 ¶ 8.) According to Verizon, Organ and his supervisors soon began to doubt plaintiff's client skills, confidence and performance. (56.1 ¶¶ 6–7.) Ultimately, the plaintiff satisfied only 42 percent of her $6 million sales quota. (56.1 ¶¶ 7–8; 56.1 Resp. ¶¶ 7–8, 37.)

Organ gave the plaintiff a poor performance review in September 2003, and issued a written critique informing her of areas where her performance needed improvement. (56.1 ¶ 11; 56.1 Resp. ¶ 11.) In December 2003, the plaintiff reported to the company's employee assistance program that she believed Organ was discriminating against her. (Winston Interrog. Resp. 15; Winston Dep. 22–23, 158, 165.) Organ gave the plaintiff another critical review on January 8, 2004, at which point plaintiff was told that she would be reviewed under a Verizon Sales Performance Improvement Plan Action Agreement (the "PIP"). (56.1 ¶¶ 11, 13; Aron Dec. Ex. D.) The PIP noted that if the plaintiff failed to progress under its terms, the plaintiff could be subject to termination. (Aron Dec. Ex. D.)

In the January 8 review session, Organ criticized plaintiff's handling of a meeting with Credit Suisse and questioned whether she was capable of fulfilling her job responsibilities; the plaintiff acknowledges that these criticisms were made, (56.1 ¶¶ 13; 56.1 Resp. ¶¶ 13.) During a dispute between Organ and the plaintiff that Verizon describes as a "shouting match," Organ uttered the phrase, "You people can't do anything right." (56.1 ¶¶ 14–15; 56.1 Resp. ¶¶ 14–15.) According to the plaintiff, Organ also made other utterances at

various times, including, "Black people are not intelligent," and, "You people are all the same, you are all thieves." (56.1 Resp. ¶ 52.) For the purposes of this motion, Verizon does not dispute Winston's assertion that these statements were made, but contends that Organ's reviews of the plaintiff were directed only to professional concerns, such as technical expertise, sales performance and client relations. (56.1 ¶ 16; 56.1 Reply ¶ 51.)

In January 2004, the plaintiff complained to human resources officials that Organ was planning to fire her, and had placed her under PIP supervision as a pretext for termination. (56.1 ¶ 24.) According to the plaintiff, shortly after she returned from a session with human resources to discuss her concerns, Organ informed her that he knew she had just reported him to human resources and said that he planned to fail her under the PIP. (56.1 Resp. ¶ 62; Winston Dep. at 180, 182.) For the purposes of this motion, Verizon does not deny that the remark was made. (56.1 Reply ¶ 61.) In succeeding months, the plaintiff also contacted an employee ethics hotline at Verizon to complain about Organ's conduct. (56.1 ¶ 26) In an employee review dated April 28, 2004, Organ rated plaintiff's performance as "unacceptable," and Organ informed the plaintiff that she would be removed from the Credit Suisse account. (56.1 ¶ 18.) The plaintiff was then informed that she could find an alternative post within Verizon or else face termination. (56.1 ¶ 19.) The plaintiff remained a Verizon employee until June 14, 2004, when she was terminated. (56.1 ¶¶ 2, 19.)

## SUMMARY JUDGMENT STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. It is the initial burden of a movant on a summary judgment motion to come forward with evidence on each material element of his claim or defense, demonstrating that he or she is entitled to relief. A fact is material if it "might affect the outcome of the suit under the governing law ...." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The evidence on each material element must be sufficient to entitle the movant to relief in its favor as a matter of law. *Vt. Teddy Bear Co. v. 1–800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir.2004).

When the moving party has met this initial burden and has asserted facts to demonstrate that the non-moving party's claim cannot be sustained, the opposing party must "set out specific facts showing a genuine issue for trial," and cannot rest "merely on allegations or denials" of the facts asserted by the movant. Rule 56(e)(2), Fed. R. Civ. P, In raising a triable issue of fact, the non-movant carries only "a limited burden of production," but nevertheless "must 'demonstrate more than some metaphysical doubt as to the material facts,' and come forward with 'specific facts showing that there is a genuine issue for trial.'" *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 84 (2d Cir.2004) (quoting *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir.1993)).

An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. The Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d

Cir.1995) (internal quotations and citations omitted); *accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In reviewing a motion for summary judgment, the court must scrutinize the record, and grant or deny summary judgment as the record warrants. Rule 56(c), Fed.R.Civ.P. In the absence of any disputed material fact, summary judgment is appropriate. *Id.*

DISCUSSION

I. *The NYCHRL Antidiscrimination Standard.*

The NYSHRL has long been interpreted to require the same proofs and burdens as a federal claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq. See, e.g., Schiano v. Quality Payroll Systems, Inc.*, 445 F.3d 597, 609 (2d Cir. 2006). Until recently, the NYCHRL has been similarly interpreted to overlap with Title VII. *See, e.g., Dawson v. Bumble & Bumble*, 398 F.3d 211, 217 (2d Cir.2005). However, in 2005, the City of New York amended its administrative code to distinguish the NYCHRL from Title VII and the NYSHRL. *See* Local Civil Rights Restoration Act of 2005, Local Law No. 85 of the City of New York (Oct. 3, 2005) (the "Restoration Act").[1] Along with several revisions that are not relevant to this action, the Act expressly stated that the NYCHRL was to be interpreted and applied independent of its state and federal counterparts. As set forth in the Act's text:

> It is the sense of the Council that New York City's Human Rights Law has been construed too narrowly to ensure protection of the civil rights of all persons covered by the law. In particular, through passage of this local law, the Council seeks to underscore that the provisions of New York City's Human Rights Law are to be construed independently from similar or identical provisions of New York state or federal statutes. Interpretations of New York state or federal statutes with similar wording may be used to aid in interpretation of the New York City Human Rights Law, viewing similarly worded provisions of federal and state civil rights laws as a floor below which the City's Human Rights law cannot fall, rather than a ceiling above which the local law cannot rise.

*Id.* § 1. The Act also added the following language concerning its construction:

> Construction. The provisions of this [chapter] title shall be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably-worded to provisions of this title have been so construed.

*Id.* § 7.

Evaluating a claim brought under the NYCHRL in light of this language, the First Department recently held that the Title VII framework merely "provide[s] guidance as to the uniquely broad and remedial provisions of the local law." *Williams v. New York City Housing Authority*, 61 A.D.3d 62, 67, 872 N.Y.S.2d 27 (1st Dep't 2009) (quotation marks omitted). "[T]he City HRL now explicitly requires an independent liberal construction analysis in all circumstances, even where State and federal civil rights laws have comparable language." *Id.* The First Department noted that the NYCHRL was drafted to

---

1. The Restoration Act's full text is published at http://www.nyc.gov/html/cchr/html/ ammend04.html.

' "meld the broadest vision of social justice with the strongest law enforcement deterrent.' " *Id.* at 68, 872 N.Y.S.2d 27 (quoting Craig Gurian, *A Return to Eyes on the Prize: Litigating Under the Restored New York City Human Rights Law,* 33 Fordham Urban L.J. 255, 262 (2006)); *see also Brightman v. Prison Health Services, Inc.,* 62 A.D.3d 472, 878 N.Y.S.2d 357, 358 (1st Dep't 2009) (NYCHRL "is more liberal than either its state or federal counterpart").

 The NYCHRL applies to claims of both retaliation and discrimination. According to the First Department, the NYCHRL bars "any manner" of retaliation, and "need not result in an ultimate action with respect to employment . . . or in a materially adverse change in the terms and conditions of employment . . . ." *Williams,* 61 A.D.3d at 70–71, 872 N.Y.S.2d 27. Under the NYCHRL, "no challenged conduct may be deemed nonretaliatory before a determination that a jury could not reasonably conclude from the evidence that such conduct was, in the words of the statute, 'reasonably likely to deter a person from engaging in protected activity.' " *Id.* Retaliation is to be weighed in a context-specific assessment of whether conduct had a "chilling effect" on protected activity—a judgment that "a jury is generally best suited to evaluate . . . ." *Id.*

Subsequent to *Williams,* there has been little additional guidance as to the NYCHRL's application, either in the courts of New York State or at the federal level. *See Dixon v. City of New York,* 2009 WL 1117478, *1 (E.D.N.Y. Apr. 24, 2009) (NYCHRL does not take a "zero tolerance" stance against offensive remarks, and requires instead that an actionable claim be based on "more than 'petty slights or trivial inconveniences.' "); *Wilson v. N.Y.P. Holdings, Inc.,* 2009 WL 873206, at *29 (S.D.N.Y. Mar. 31, 2009) (the contours of the NYCHRL's overlap with Title VII "remain unclear," but pursuant to *Williams,* it applies more broadly than Title VII and the NYSHRL); *Ibok v. Securities Industry Automation Corp.,* 2009 WL 855926, at *7 (S.D.N.Y. Mar. 26, 2009) (granting summary judgment motion dismissing NYCHRA claim because plaintiff could not point to other similarly situated colleagues who received dissimilar treatment from employer). The First Department in *Brightman* held that in light of *Williams,* if a plaintiff successfully states a claim under the NYSHRL, then "[a] fortiori" she has stated a claim under the NYCHRL. *Brightman,* 878 N.Y.S.2d at 358. Thus, pursuant to *Brightman,* if a claim is viable under the NYSHRL, it is as a matter of law viable under the NYCHRL, and there is no need for further inquiry.[2]

As a federal court sitting in diversity, I am bound to apply the law of New York. *Erie R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The sense of the City Council and the rules of construction express the sentiment that the NYCHRL should be given an interpretation which is neither "too narrow" nor "[il]liberal[ ]", and need not follow more constrained interpretations of similarly worded federal legislation. But rules of construction are traditionally applied to the language of the statute where the plain meaning of the text is not discernable.

---

**2.** The plaintiff has pointed out *Williams* 's holding and the NYCHRL's divergence from the NYSHRL and Title VII, but has not proposed a framework as to how the NYCHRL should be applied to this case. Plaintiff merely notes that it is "highly doubtful" that a court should use the framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and asserts that the plaintiff "need only prove" that she was discharged or discriminated against on the basis of race. (Pl. Mem. at 25.)

*See Amorosi v. South Colonie Independent Central School District,* 9 N.Y.3d 367, 373, 849 N.Y.S.2d 485, 880 N.E.2d 6 (2007). The language of the NYCHRL is broadly worded and makes it unlawful for an employer, because of the "actual or perceived" race or other specified status, "to refuse to hire or employ ... [a] person or to discriminate against [a] person in compensation or in terms, conditions or privileges of employment." N.Y.C. Admin. Code. § 8–107(1)(a). The Administrative Code's rule of construction may have applicability, for example, in construing "actual or perceived" status or the "terms, conditions or privileges of employment." However, I do not read the rule of construction as having applicability to the kind, quality or nature of evidence that is necessary to support or defeat a motion for summary judgment under Rule 56, a procedural rule to which federal law applies. *See, e.g., Gasperini v. Center for Humanities, Inc.,* 518 U.S. 415, 427–28, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996). *See also Every v. Makita U.S.A., Inc.,* 2005 WL 2757952 (S.D.N.Y. Oct. 24, 2005) (Lynch, J.) (declining to apply Michigan summary judgment principles in diversity action governed by Michigan substantive law).

## II. *Plaintiff Has Made Out a Prima Facie Case of Race and Gender Discrimination.*

■ Verizon argues that the plaintiff has failed to establish a prima facie case of employment discrimination, as required by the NYSHRL and the first prong of *McDonnell Douglas.* Under *McDonnell Douglas,* the plaintiff first has the burden of proving by a preponderance of the evidence a prima facie case of discrimination; if the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory basis for its actions; finally, the plaintiff must then prove by a preponderance of the evidence that the reasons proffered by the defendant were merely pretextual. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

■ To establish a prima facie case, a plaintiff must show (1) membership in a protected class, (2) qualification for the position, and (3) an adverse employment action arising under circumstances that (4) raise an inference of discrimination. *Sassaman v. Gamache,* 566 F.3d 307, 311–12 (2d Cir.2009). The plaintiff's burden in establishing a prima facie case is "minimal" and "de minimis." *Id.*

■ Based on the record before me, I conclude that the plaintiff has satisfied her minimal burden. There is no dispute that, as an African American and a woman, the plaintiff is a member of a protected class, or that plaintiff's termination amounted to an adverse employment action. Verizon's principal argument is that, under the second prong, the plaintiff cannot establish that she was qualified for her position as strategic account manager, and that therefore no reasonable jury could draw an inference of discrimination. To show qualification for a job, a plaintiff must only offer evidence that he or she has the ' "basic skills necessary for performance of [the] job.' " *Slattery v. Swiss Reinsurance America Corp.,* 248 F.3d 87, 92 (2d Cir.2001) (alteration in original) (quoting *Owens v. New York City Housing Authority,* 934 F.2d 405, 409 (2d Cir.1991)). "[W]here discharge is at issue and the employer has already hired the employee, the inference of minimal qualification is not difficult to draw." *Id.* Plaintiff has an associate's degree in business education, a bachelor's degree, a master's degree in quality management systems, and a master's degree in business administration. (56.1 Resp. ¶¶ 28–29.) From 1982 through

2002, she held multiple positions within Verizon. (56.1 Resp. ¶ 30.) During that time, she received several positive reviews from management and supervising staff. (56.1 Resp. ¶¶ 31–32.) Plaintiff also cites favorable feedback from customers, including written notes. (56.1 Resp. ¶ 35.) When plaintiff was promoted to the title of strategic account manager, the responsibilities were similar to those of her prior position, except that instead of handling multiple accounts, she was exclusively assigned to Verizon's account with Credit Suisse. (56.1 ¶ 37.)

While there is evidence discussed above that gives rise to an inference of race discrimination, the evidence that would give rise to an inference of gender discrimination is less apparent. However, as to the existence of a prima facie case, no independent challenge is raised by the defendant as to the evidence, or lack thereof, supporting an inference of discrimination. Rather, Verizon argues that because the plaintiff was unqualified for her position, there can be no race- or gender-based motivation behind her termination. (Def. Mem. at 15.)

The record is sufficient to satisfy the "minimal," or "de minimis," burden required of a plaintiff to make out a prima facie case of discrimination, *Sassaman*, 566 F.3d 307, 311–12, and is consistent with the category of evidence generally credited for establishing an employee's job qualifications for the purpose of making a prima facie case. *See, e.g., Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir.2003) (seventeen years of experience and positive evaluations "on a wide range of job elements" established prima facie case of job qualification); *Everson v. New York City Transit Authority*, 2007 WL 539159, at **20–21 (E.D.N.Y. Feb. 16, 2007) (significant job experience and positive employment reviews made a prima facie case that plaintiff was qualified for job). To the extent that Verizon contends that the plaintiff's job performance preceding her termination was unsatisfactory, such evidence is more properly considered under the second and third prongs of the *McDonnell Douglas* framework: whether Verizon had a legitimate, non-discriminatory reason for terminating the plaintiff, and whether that reason was pretext.

Plaintiff has come forward with sufficient evidence to establish a prima facie case of discrimination under the NYSHRL.

### III. *Plaintiff Has Made Out a Prima Face Case of Retaliation.*

 The plaintiff contends that she was a victim of retaliation in violation of the NYSHRL and NYCHRL, and asserts that the retaliatory conduct arose out of her complaints concerning Organ's allegedly discriminatory treatment. " '[T]o establish a prima facie case of retaliation, an employee must show [1] participation in a protected activity known to the defendant; [2] an employment action disadvantaging the plaintiff; and [3] a causal connection between the protected activity and the adverse employment action.' " *Richardson v. Commission on Human Rights & Opportunities*, 532 F.3d 114, 123 (2d Cir. 2008) (quoting *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir.1998)), *petition for cert. filed*, 77 USLW 3563 (U.S. Jan. 26, 2009); *see also Patane v. Clark*, 508 F.3d 106, 115–17 (2d Cir.2007) (analyzing retaliation claim under NYSHRL using the same criteria as Title VII).

Beginning in December 2003, the plaintiff orally complained about conduct by Organ that she considered discriminatory, first to Harry Migenes, a representative of Verizon's Employee Assistance Program. (56.1 Resp. ¶ 61; Winston Dep. 22–23, 158,

165.) Winston then complained about Organ to Verizon's HR department on or about January 8, 2004, specifically to individuals named Margaret Ropke and Patrick Koseski. (56.1 Resp. ¶¶ 61–62; Winston Dep. 23, 50.) She complained to Ropke that Organ was discriminating against her on the basis of race and gender. (56.1 Resp. ¶ 62; Winston Dep. 152–54.) Ropke then arranged for the plaintiff to speak with Koseski. (Winston Dep. 154.) The plaintiff told Koseski that she believed Organ was discriminating against her on the basis of race and gender, and that Organ was hoping to fire her. (Winston Dep. 156.) According to the plaintiff, immediately upon returning to her workspace, Organ told her that he was aware that the plaintiff had just reported him to HR, and stated that "he would make sure that [the plaintiff] didn't pass" the PIP. (56.1 Resp. ¶ 62; Winston Dep. at 180, 182.) Plaintiff also complained of discrimination to Cynthia Germanotta, an HR managing director, and to an individual named Dave Rainey in Verizon's ethics office. (56.1 Resp. ¶ 61; Winston Dep. 152, 156–57.) According to the plaintiff, on April 8, 2004, Organ informed her that she had passed the PIP, but then, on April 28, he told her that she had failed the PIP. (Winston Dep. 261–62.)

■ Verizon argues that plaintiff's negative reviews and termination were the products of inadequate sales volume and client skills. Verizon cites to evidence concerning disappointing sales results, which the plaintiff maintains was explained by Credit Suisse's own business problems, and therefore a mere pretext for her termination. However, there is the close temporal nexus between her complaint to Koseski and Organ's statement immediately thereafter that he intended to ensure that she fail the PIP. There is sufficient evidence to raise a triable issue of fact as to a causal connection between the plaintiff's complaints and her subsequent termination. *See Quinn,* 159 F.3d at 770 ("strong temporal correlation" between complaint to company HR and termination raises triable issue of fact on retaliation claim).

■ Verizon also cites deposition testimony from the plaintiff indicating that Organ's retaliatory conduct included placing her on PIP and engaging various forms of conduct that could be characterized as abrasive. Verizon argues that such acts do not rise to the level of an adverse action taken in retaliation. While rudeness is not itself actionable under the NYSHRL or Title VII, *see Faison v. Leonard St., LLC,* 2009 WL 636724, at *4 (S.D.N.Y. Mar. 9, 2009) (collecting cases), the event most relevant to identifying an adverse employment action is the plaintiff's termination. "[T]ermination is an adverse employment action." *Sista v. CDC Ixis North America, Inc.,* 445 F.3d 161, 169 (2d Cir.2006).

■ Here, the plaintiff complained of discriminatory conduct to the company's human resources office. Raising concerns of discrimination to a human resources department is quintessential protected activity. *See Gallagher v. Delaney,* 139 F.3d 338, 349 (2d Cir.1998), *abrogated on other grounds as recognized in Quinn,* 159 F.3d at 767; *Cifra v. G.E. Co.,* 252 F.3d 205, 217 (2d Cir.2001). Among the opinions that Verizon cites for support, *Knight v. City of New York,* 303 F.Supp.2d 485, 496 (S.D.N.Y.2004), *aff'd,* 147 Fed.Appx. 221 (2d Cir.2005), observed that no adverse employment action followed plaintiff's complaint to human resources; the plaintiff was never terminated, and could point to no denial of promotion or diminished pay. Unlike *Knight,* plaintiff's negative employment reviews preceded an eventual termination. In addition, *Knight* noted the lack of evidence showing a connection between

protected activity and adverse action. *Id.* Here, Organ stated an intention to fail plaintiff under the PIP immediately upon her return from meeting with HR. Another opinion Verizon cites, *Almonord v. Kingsbrook Jewish Medical Center,* 2007 WL 2324961, at *10 (E.D.N.Y.2007), concluded that the plaintiff had not engaged in any protected activity that could lead to retaliation.[3]

Verizon's motion for summary judgment is denied as to the retaliation claim.

IV. *A Reasonable Juror Could Conclude that Verizon's Explanations for Terminating the Plaintiff Are Pretextual.*

A. *Verizon Has Articulated a Legitimate, Non–Discriminatory Basis for Its Termination of the Plaintiff.*

Lastly, Verizon argues that summary judgment should be granted in its favor because there is no issue of fact as to whether it had a legitimate, nondiscriminatory, non-retaliatory basis for its actions. As noted, under the NYSHRL and Title VII, if a plaintiff has successfully established a prima facie case of discrimination, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory basis for its actions; the plaintiff then has the opportunity to prove by a preponderance of the evidence that the reasons proffered· by the defendants were pretextual. *Texas Dep't of Community Affairs,* 450 U.S. at 252–53, 101 S.Ct. 1089.

Verizon has come forth with evidence supporting its position that the plaintiff was terminated for legitimate, non-discriminatory reasons. Specifically, Verizon argues that plaintiff's poor work performance justified her termination. If supported, this would be an adequate ground to satisfy the second prong of the *McDonnell Douglas* inquiry. *See Chertkova v. Connecticut General Life Insurance Co.,* 92 F.3d 81, 87 (2d Cir.1996) ("deficient" work performance is a legitimate basis for termination).

Verizon has set forth evidence that the plaintiff was assigned to the position of account manager as part of Verizon's reorganization, which arose at a time of heightened competitive pressure for the Company. (56.1 ¶¶ 4, 5.) After she was assigned to manage Verizon's account with Credit Suisse, she secured only 42 percent of her $6 million sales quota, (56.1 ¶ 8.) Simultaneously, Verizon fielded seven customer complaints about plaintiff's handling of the Credit Suisse account, including specific criticism from a Credit Suisse vice president made to Organ that plaintiff "added no value." (56.1 ¶¶ 9–10.) While under PIP, Organ observed, among other things, that the plaintiff failed to "close the meeting [with Credit Suisse] properly" and did not solicit client feedback. (56.1 ¶¶ 12–13.) In the April 28, 2004 PIP update, Organ rated the plaintiff's client presentation skills "unacceptable" and concluded that her task execution "needed improvement." (56.1 ¶ 18.) She received an overall rating of "unacceptable." (56.1 ¶ 18.)

---

**3.** Other cases relied upon by Verizon are similarly irrelevant to the issues raised in Verizon's motion. *See Siddiqi v. New York City Health & Hospitals Corp.,* 572 F.Supp.2d 353, 371–72 (S.D.N.Y.2008) (dismissing plaintiff's retaliation claim because plaintiff failed to make a prima facie case that he was qualified for promotion); *Garone v. United Parcel Service,* 2001 WL 984914, at **3–4 (E.D.N.Y.

2001) (isolated comments by superiors are not an adverse employment action); *Bampoe v. Coach Stores, Inc.,* 93 F.Supp.2d 360, 372 (S.D.N.Y.2000) (a disapproving "look" and remarks about appropriateness made to a superior in response to racially insensitive comments is not protected activity that can premise a retaliation claim).

This is a legitimate, non-discriminatory and non-retaliatory basis for plaintiff's termination.

B. *The Plaintiff Has Raised Triable Issues of Fact as to Whether the Basis for Her Termination was Pretextual.*

■ Under the third prong of the *McDonnell Douglas* test, the plaintiff must come forward with evidence sufficient to raise a triable issue of fact as to whether the reasons articulated by the defendant are merely pretextual.

The plaintiff has cited to numerous statements—many of them undisputed by Verizon—that would permit a reasonable jury to find discriminatory motivation on Organ's part. Such statements are particularly relevant in a case such as this, where the individual alleged to have made discriminatory statements was the principal decision-maker in the plaintiff's termination. *See Tomassi v. Insignia Financial Group, Inc.*, 478 F.3d 111, 116 (2d Cir.2007) ("The relevance of discrimination-related remarks does not depend on their offensiveness, but rather on their tendency to show that the decision-maker was motivated by assumptions or attitudes relating to the protected class."); *Bang v. IBM Corp.*, 600 F.Supp.2d 430, 436 (S.D.N.Y.2009) (triable issue of fact arises when individual alleged to utter offensive remarks was key decisionmaker).

The statements cited by the plaintiff include the following: "You people cannot do anything right." (56.1 Resp. ¶ 52; Winston Dep. 90); "Black people are not intelligent." (56.1 Resp. ¶ 52; Winston Dep. 262); "You people can't be trusted." (56.1 Resp. ¶ 52; Winston Dep. 97–98); "You people don't deserve [to be] managing strategic accounts. You should be managing small business accounts in Regional." (56.1 Resp. ¶ 52; Winston Dep. 119); "You people are all the same, you are all thieves." (56.1 Resp. ¶ 52; Winston Dep. 120); "You people are all thieves. You cannot be trusted." (56.1 Resp. ¶ 56; Winston Dep. 122); and, "There is one thing that I cannot tolerate and that is ignorant black people who think that they belong in a high salary position." (56.1 Resp. ¶ 53; Winston Interrog. Resp. 18.) According to the plaintiff, Organ uttered other statements with allegedly discriminatory overtones, such as, "You sound like you just escaped from the South," and, "Sound intelligent, like you know what you are talking about and leave the accent outside." (56.1 Resp. ¶ 54; Winston Interrog Resp. 17.)[4]

In its Reply Statement proffered under Local Rule 56.1, Verizon has admitted for the purposes of this motion the truth of plaintiff's deposition testimony, including the statements cited in plaintiff's Rule 56.1 Response. (56.1 Reply ¶ 51.) The statements attributed to Organ, which are undisputed at this stage, raise triable issues of fact as to Organ's motivations in both his review of the plaintiff and her performance goals. As Verizon points out, use of the phrase "you people" is ambiguous and not necessarily evidence of discrimination. *See, e.g., Big Apple Tire, Inc. v. Telesector Resources Group, Inc.*, 476 F.Supp.2d 314, 327 (S.D.N.Y.2007). However, questions of state of mind are best left to a jury, and if statements such as, "Black people are not intelligent," and, "You people are all the same, you are all thieves," are credited

4. Verizon vigorously challenges the admissibility of what it characterizes as a "sham affidavit" submitted by the plaintiff. It asserts that the quotations plaintiff attributes to Organ in her interrogatory responses were not mentioned in her deposition, and were incorporated in the interrogatory responses through belated amendments. For the purposes of this motion, I make note of the assertions contained in the interrogatory responses, but limit the analysis to plaintiff's uncontested deposition testimony.

as true, a reasonable juror may construe it as a reflection of discriminatory motivation directed toward the plaintiff.

The plaintiff has set forth non-conclusory assertions that raise triable issues of fact concerning whether Organ's assessment of her performance under the PIP, and the reasons for her eventual termination, were pretext. Because the plaintiff has come forth with evidence raising a triable issue of fact as to whether her termination was pretextual, Verizon's summary judgment motion is denied.

CONCLUSION

The defendant's motion for summary judgment is denied.

SO ORDERED.